UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CLIFFORD B.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01192-JMS-TAB |
| | ) | |
| FRANK J. BISIGNANO, *Commissioner of Social Security Administration*, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Clifford B. applied for a period of disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on February 6, 2023, with a disability onset date of November 29, 2022. [Filing No. 9-5 at 5-9.] His application was denied initially on May 26, 2023, [Filing No. 9-4 at 8-11], and upon reconsideration on September 25, 2023, [Filing No. 9-4 at 15-17]. Administrative Law Judge Monica LaPolt ("the ALJ") conducted a hearing on March 22, 2024, [Filing No. 9-2 at 43-70], before issuing a decision on April 26, 2024 in which she concluded that Clifford B. was not entitled to benefits, [Filing No. 9-2 at 26-38]. The Appeals Council denied review on April 18, 2025. [Filing No. 9-2 at 2-5.] On June 17, 2025, Clifford B. filed this civil action pursuant to 42 U.S.C. § 405(g), seeking a review of the denial of his benefits. [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Administration provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting 42 U.S.C. § 423(d)).

When an applicant appeals an adverse benefits decision, the Court "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citation omitted). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "But even under this deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [the] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Hess*, 92 F.4th at 677 (citations omitted); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).  The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner];

(4) whether the claimant can perform [his] past work; and

(5) whether the claimant is capable of performing work in the national economy.

*Hess*, 92 F.4th at 677 (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)).  A claimant is disabled if he satisfies Steps One, Two, and Three. *Gedatus*, 994 F.3d at 898.  If a claimant satisfies Steps One and Two, but not Step Three, the claimant must then satisfy Step Four to be found disabled. *See id.*  "The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022).  "[I]f the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then [he] need not progress to the next step." *Hess*, 92 F.4th at 677-78 (quotations and citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is an assessment of "the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773 (citation omitted).  An ALJ must consider seven strength functions when assessing a claimant's RFC to work: "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 773-74 (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)).  An ALJ must also describe "how the evidence supports each conclusion [on strength functions], citing specific medical facts (e.g., laboratory findings)

and nonmedical evidence (e.g., daily activities, observations)." *Jarnutowski*, 48 F.4th at 773 (quoting SSR 96-8p, 61 Fed. Reg. at 34478). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe and may not dismiss a line of evidence contrary to the ruling." *Id.* at 774 (quotations and citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.920(a)(4)(iv), (v).

If the ALJ's decision "uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions," the Court must affirm the denial of benefits. *Hess*, 92 F.4th at 677 (quotations and citation omitted); *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). But if the ALJ's decision "is based on incorrect legal standards or unsupported by substantive evidence," the Court will remand for further consideration. *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023) (citations omitted).

## II.
### BACKGROUND

Clifford B. was 63 years of age on his alleged onset date. [*See* Filing No. 9-5 at 2.] He has a high school education and previously worked as a machine operator and a mixer operator.[2] [Filing No. 9-2 at 49-54.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ determined that Clifford B. meets the insured status requirements of the Social Security Act through June 30, 2026.  [Filing No. 9-2 at 28.]  The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Clifford B. was not disabled.  [Filing No. 9-2 at 26-38.]  Specifically, the ALJ found as follows:

- At Step One, Clifford B. had not engaged in substantial gainful activity[3] since November 29, 2022, the alleged onset date.  [Filing No. 9-2 at 28.]

- At Step Two, Clifford B. has the following severe impairment: right chest wall neuropathy.  [Filing No. 9-2 at 28-29.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 9-2 at 29.]

- After Step Three but before Step Four, Clifford B. had the RFC to perform "the full range of light work as defined in 20 CFR 404.1567(b)."  [Filing No. 9-2 at 29-37.]

- At Step Four, Clifford B. was able to perform past relevant work as a machine operator.  [Filing No. 9-2 at 37.]

### III.
### DISCUSSION

Clifford B. raises three issues: (1) the ALJ failed to account for all of Clifford B.'s impairments when formulating the RFC; (2) the RFC determination is not supported by substantial evidence; and (3) the ALJ failed to properly evaluate the subjective symptom testimony.  [Filing No. 11 at 5-12.]  The Court addresses each issue in turn.

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

## A.    Impairment Determination

Clifford B. argues that the ALJ erred by not qualifying his bilateral shoulder issues as a "severe, non-severe, or non-medically determinable impairment." [Filing No. 11 at 6.] He points to medical records reflecting that he had bilateral shoulder pain and "crepitus of the left shoulder and decreased range of motion with pain or abduction greater than 120 degrees and with post-flexion and internal rotation." [Filing No. 11 at 6.] Clifford B. contends that the ALJ did not discuss his shoulder issues when assessing his severe impairments and that "even if the ALJ had concluded that [his] shoulder issues were non-severe, the ALJ should have found appropriate functional limitations in the RFC assessment that accounted for them" [Filing No. 11 at 6.]

The Commissioner argues in response that the only reference to bilateral shoulder pain that Clifford B. points to indicates that his right shoulder pain had resolved six months earlier. [Filing No. 13 at 5.] He notes that the ALJ considered Clifford B.'s "minimal left shoulder treatment and resolved right shoulder complaint" later in her opinion as part of the RFC analysis and that Clifford B. "does not explain how a single treatment note from June 2023 that indicated some crepitus (popping) and reduced range of motion, but no swelling, weakness, tenderness, or pain with lifting and that was treated with a prescription for a nonsteroid anti-inflammatory and a referral to physical therapy translates to a severe impairment mandating RFC limitations." [Filing No. 13 at 5-7.] The Commissioner asserts that Clifford B. does not identify what limitations in his RFC would have addressed his non-severe left shoulder pain and does not cite to any medical evidence "showing specific functional work limitations or that he would be limited to such a degree as to preclude employment." [Filing No. 13 at 7-8.] He argues further that the ALJ only needs to consider all impairments, including non-severe impairments, in determining the RFC and is not obligated to impose RFC limitations from non-severe impairments. [Filing No. 13 at 8.] The

Commissioner contends that the ALJ "specifically recounted the minimal record medical evidence as to [Clifford B.'s] left shoulder pain," and "more than sufficiently articulated and supported her RFC finding." [Filing No. 13 at 8.]

In his reply, Clifford B. argues that the ALJ only discussed the treatment for shoulder pain "in the context of evaluating the evidence of record as a whole," and "did not list any impairment in connection with [his] shoulder issues and did not discuss this portion of his treatment in the context of assessing severe impairments." [Filing No. 14 at 2.] He reiterates that even if the ALJ found that his shoulder issues were non-severe, she "should have found appropriate functional limitations in the RFC assessment that accounted for them." [Filing No. 14 at 2-3.]

At the hearing, Clifford B. testified regarding issues with his right side, but focused on the after-effects of his right middle lobe lobectomy with right upper lobe wedge resection and mediastinal lymph node dissection, along with cryoablation of the intercostal nerves, and feeling tired. [*See* Filing No. 9-2 at 59-66 (Clifford B. testifying that he did not feel "100% healed" from the surgery, that he has nerve issues from nerve blocks done during surgery on his right side, and that he is able to complete household chores but sometimes feels tired and short of breath).] Notably, he did not raise any issues with his shoulders nor did his attorney question him regarding his left shoulder. [*See* Filing No. 9-2 at 48-66.]

The ALJ acknowledged and discussed Clifford B.'s shoulder issues in connection with her RFC finding, stating:

> The claimant presented to his primary care provider, Dr. Vanita Yakhmi, M.D., on June 1, 2023, with complaint of left-sided shoulder pain, ongoing for one month, aggravated by certain movements and a report of right-sided shoulder pain the prior January, for which he was referred to Physical Therapy, and which resolved shortly thereafter…. On examination, he was noted to have crepitus of the left shoulder and decreased range of motion with pain on abduction greater than 120 degrees and with post-flexion and internal rotation, with normal strength…. He was assessed with acute pain of the left shoulder and referred to Physical Therapy, and he was

assessed with neuropathic pain, with plans to continue with gabapentin 600 mg three times per day and to continue care with Thoracic Surgery.

[Filing No. 9-2 at 34.]  The ALJ noted, "[a]s to precipitating and aggravating factors, I have taken these matters into account in assessing the claimant's [RFC]."  [Filing No. 9-2 at 35.]  She limited Clifford B. to "the full range of light work as defined in 20 CFR 404.1567(b)."  [Filing No. 9-2 at 29.]

The medical records that the ALJ acknowledged in connection with her RFC finding are the only records to which Clifford B. points.  [*See* Filing No. 11 at 6; Filing No. 14 at 2-3.]  The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhard*, 384 F.3d 363, 370 (7th Cir. 2004)); *see also Gedatus*, 994 F.3d at 904 ("A fundamental problem is [the claimant] offered no opinion from any doctor to set…any other limits, greater than those the ALJ set.").  Clifford B. has not pointed to any medical records that would support a limitation greater than the RFC the ALJ imposed.

Additionally, an ALJ "doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (collecting cases (citing *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). The Court finds it significant that Clifford B. did not raise any issues with his shoulders during the ALJ's hearing, nor did his counsel ask him about any shoulder issues.  *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (a claimant represented by counsel is presumed to have made his best case for benefits).  And although Clifford B. discussed issues with his right side during the hearing, he tied those issues to the surgery and the cryoablation, not to a shoulder issue.  [*See* Filing No. 9-2 at 59-66.]  Further, Clifford B.'s medical records reflect that any right shoulder issues had resolved with physical therapy.  [*See* Filing No. 9-8 at 375-76.]

As for Clifford B.'s argument that even if his shoulder issues were not severe the ALJ was still required to consider them in connection with his RFC, the Court acknowledges that the ALJ "must determine whether or not the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" 20 C.F.R. § 404.1520(c).  Further, an ALJ's decision must be based on consideration of all relevant evidence and her conclusions must be stated in a manner sufficient to permit an informed review. *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).  Here, the ALJ recognized the medical evidence of shoulder pain and noted "[a]s to precipitating and aggravating factors, I have taken these matters into account in assessing the claimant's [RFC]."  [Filing No. 9-2 at 35.]  She then explained that "given [Clifford B.'s] status post lung resection and chemotherapy for lung cancer, as well as his neuropathy, I restricted the claimant to the full range of light work, to reduce stressors from greater exertional demands and consistent with his level of activities of daily living as set forth in [a Function Report] and in his hearing testimony."  [Filing No. 9-2 at 35.]  This minimal articulation indicating that she considered the combination of Clifford B.'s symptoms and conditions is sufficient. *See Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("We examine the [ALJ's] opinion as a whole to ascertain whether [she] considered all of the relevant evidence, made the required determinations, and gave supporting reasons for [her] decisions.").

Based on the lack of testimony regarding shoulder issues, the lack of medical evidence indicating that shoulder issues warranted a more limited RFC, and the fact that the ALJ acknowledged and considered the limited evidence relating to shoulder issues, the Court finds that the ALJ sufficiently considered Clifford B.'s shoulder issues and that remand is not warranted.

**B.      RFC Determination**

Next, Clifford B. argues that the ALJ's RFC determination is not supported by substantial evidence and that he cannot perform work at the light exertional level, pointing to medical records showing that he had a mass, "moderate upper lobe predominant emphysema," and "lingular calcified granuloma" in 2022; he underwent "right middle lobe lobectomy with right upper lobe wedge and mediastinal lymph node dissection" in January 2023; he had nodules and lesions that were likely cysts in April 2023; he had a small pulmonary nodule in August 2023; and he had an unchanged right upper lobe nodule and liver lesions in November 2023.  [Filing No. 11 at 7-8.] Clifford B. contends that "a decision to impose exertional imitations is consistent with the exertional limitations opined by the non-examining State Agency examiners" and that the ALJ "insert[ed] her own lay interpretation of raw medical data to justify her RFC determination" when she "found the only opinion evidence of record to be partially persuasive and assessed less restrictive limitations than was initially opined," and when she "concluded [that Clifford B.'s] lung cancer and status post…right lung resection were non-severe because subsequent imaging shows no recurrence of the disease, following resection and treatment with chemotherapy."  [Filing No. at 8-9 (quotation and citation omitted).]  He notes that the VE classified his previous jobs as "light and performed as heavy" (machine operator) and "medium" (mixer operator), so the ALJ should have concluded that Clifford B. could not perform his past relevant work.  [Filing No. 11 at 9.] Because he was over 60 at the time of the ALJ's decision, Clifford B. argues that a finding that he could not perform his past relevant work would have led to a finding of disability so the ALJ's error was not harmless.  [Filing No. 11 at 9.]

In his response, the Commissioner argues that Clifford B. points to medical evidence from before his lung cancer surgery yet acknowledges that he has recovered from lung cancer, that

Clifford B. does not identify any ongoing issues that require accommodations despite claiming that they exist, and that "the ALJ's decision reflects that she considered [Clifford B.'s] lung cancer and other lung impairments at Step Two and throughout her decision." [Filing No. 13 at 10.] As for adopting a less restrictive RFC than that recommended by state-agency medical consultants, the Commissioner contends that the ALJ was not required to adopt a particular physician's opinion and the ALJ "provided a detailed analysis of the record evidence before finding that [Clifford B.] could perform light work." [Filing No. 13 at 10-11.] The Commissioner argues further that Clifford B. "ignores that the medical consultants opined that he could perform light work and the only additional limitations they offered were that he could frequently perform all postural movements," the machine operator position is light as performed in the national economy, a claimant is not disabled if he can perform his past relevant work either as performed or as performed in the national economy, and the machine operator position as performed in the national economy requires "no more than frequent postural movements." [Filing No. 13 at 11.]

In his reply, Clifford B. points to the same medical records and reiterates his argument that he is not able to perform the full range of light exertional work. [Filing No. 14 at 3-4.] He also reiterates his arguments that the state-agency examiners found that some exertional limitations were appropriate, that the ALJ "insert[ed] her own lay interpretation of raw medical data to justify her RFC determination," and that the ALJ's error was not harmless. [Filing No. 14 at 4-5.]

The RFC is an indication of the most that the claimant can do in a work setting despite his mental and physical limitations, and must incorporate all of the claimant's limitations supported by the medical record. 20 C.F.R. § 404.1545; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). While the ALJ need not discuss every piece of evidence in the record, the ALJ must "build an accurate and logical bridge from the evidence to

11

[the] conclusion" so that the reviewing court "'may assess the validity of the agency's final decision and afford [a claimant] meaningful review.'" *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted); *see also Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary evidence."); *Zurawski*, 245 F.3d at 889 ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Here, the ALJ discussed all of the medical evidence to which Clifford B. points. [*See* Filing No. 9-2 at 32-36.] She noted that she was restricting Clifford B. to the full range of light work due to his "status post lung resection and chemotherapy for lung cancer as well as his neuropathy," that the restriction to light work was "consistent with his level of activities of daily living as set forth in [a Function Report] and in his hearing testimony," and that while Clifford B. has required "surveillance and monitoring," gabapentin was discontinued with no other treatment provided and "[t]he lack of more extensive treatment is inconsistent with the existence of a disabling impairment." [Filing No. 9-2 at 35-36.]

As for the state-agency examiner, the ALJ discussed its opinion, noted that the opinion "is mostly supported by and consistent with the claimant's treatment records that demonstrate reports of neuropathy," but noted that "given [Clifford B.'s] improvement in symptoms, such that he discontinued the medication of gabapentin that was prescribed for the neuropathy, the state agency opinion is not entirely persuasive, as the evidence supports the claimant's ability to perform the full range of light work, as set forth in the above stated [RFC]." [Filing No. 9-2 at 36-37.] The

ALJ was not required to adopt the state agency examiner's opinion, but only had to consider and address the opinion and build a logical bridge to her conclusion.  *See Giles*, 483 F.3d at 487; SSR 96-8p.  She has done this.

Additionally, the ALJ's RFC discussion is thorough and the Court has not identified instances of the ALJ "inserting her own lay interpretation of raw medical data to justify her RFC determination."  [Filing No. 11 at 8.]  Rather, she noted that medical records show that Clifford B.'s lung cancer has not recurred and discussed other medical records in detail.  [Filing No. 9-2 at 32-36.]  Clifford B. has not pointed to medical evidence indicating that he cannot perform light work.  And while the VE testified that Clifford B.'s past job as a machine operator was "light, actually performed as heavy," Clifford B. need only be able to perform the job either as he performed it ("heavy") or as performed generally ("light").  20 C.F.R. § 404.1560(b) (noting that a VE may offer expert opinion testimony regarding whether claimant can "meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy").  Because the machine operator position is light as performed in the national economy, the ALJ did not err in finding that Clifford B. could perform that job with his RFC limitation to light work.

Clifford B. has not pointed to any issues with the ALJ's RFC determination that warrant remand.

### C.    Consideration of Subjective Symptom Testimony

Finally, Clifford B. argues that the ALJ noted Clifford B.'s ability to perform certain daily activities of living such as managing personal care and hygiene, driving with no problems, watching television, grocery shopping, preparing meals, washing laundry, cleaning his apartment, riding his bike, spending time with others once or twice per week, attending church, and watching

his friends bowl, but "does not explain how [his] performance of these activities equates to the ability to sustain competitive work at the light exertional level." [Filing No. 11 at 10-11.]

The Commissioner argues that the ALJ "sufficiently analyzed the evidence," and properly considered Clifford B.'s activities of daily living. [Filing No. 13 at 12-13.] He contends that Clifford B. is arguing that the ALJ "equated [Clifford B.'s] activities of daily living with full-time work," but that there is no indication she did so. [Filing No. 13 at 13-14.] He notes that "activities of daily living are but one factor under SSR 16-3p" and that "[c]ourts have upheld otherwise well-supported subjective symptom assessments, even where the ALJ's consideration of daily activities [was] not fully explained." [Filing No. 13 at 14.]

Clifford B. reiterates his arguments in his reply. [Filing No. 14 at 6-7.]

As the Seventh Circuit has observed, "working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity." *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). That is because there are "critical differences between activities of daily living and activities in a full-time job[.]…[A] person has more flexibility in scheduling the former than the latter, can get help from other persons…and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Consequently, an ALJ must strike a balance. On the one hand, an ALJ may not "equat[e] activities of daily living with an ability to work." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). On the other hand, "it is entirely permissible to examine…a claimant's daily activities[ ] to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022). For example, if activities of daily living involve the kinds of exertions that contradict the claimant's testimony, the ALJ can properly discount the claimant's testimony regarding symptoms. *See, e.g.*, *Mitze v.*

*Colvin*, 782 F.3d 879, 880-82 (7th Cir. 2015) (affirming ALJ's denial of benefits where claimant trained for a marathon and "ran 5,000 meters in a race.") (emphasis omitted).

Here, the ALJ stated the following regarding Clifford B.'s ability to perform certain daily activities:

> Regarding the claimant's daily activities, the evidence as a whole demonstrates his limitations are less severe than he alleges. Specifically, the claimant is able to manage his personal care and hygiene, drive with no problems, watch television, grocery shop, prepare meals, wash laundry, clean his apartment, ride his bike, and spend time with his others once or twice per week, attend church, and watch his friends bowl. Accordingly, I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residual functional capacity.

[Filing No. 9-2 at 32.]

The ALJ's statements do not reflect that she was equating Clifford B.'s ability to perform activities of daily living with the ability to perform light work. Rather, she found that his ability was inconsistent with his testimony regarding the severity of his symptoms. This is permissible. *Prill*, 23 F.4th at 748. Further, the ALJ did not put undue emphasis on Clifford B.'s ability to perform activities of daily living. After making this finding, she went on to provide a five-page, thorough assessment of the medical evidence before concluding that Clifford B. could engage in light work. This is not a situation where the ALJ listed the daily activities a claimant could perform and concluded based only on those activities that the RFC was appropriate.

The Court finds that the ALJ provided a logical bridge from her discussion of Clifford B.'s ability to perform activities of daily living to her RFC finding and that the ALJ's consideration of Clifford B.'s activities of daily living was appropriate and does not warrant remand.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Clifford B. to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 1/26/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**